## HUBBARD vs. BONESTEEL.

In an action for a breach of promise of marriage, not only the mutual engagement, but a breach thereof, by the refusal of the defendant to marry, may be proved by circumstantial evidence.

And if there is any evidence upon the subject, the judge should leave it to the jury to say, in case they should find a promise, whether there was not also a refusal.

THIS was an action for breach of promise of marriage, tried at the Ulster circuit, in April, 1852, before Mr. Justice Wright. The plaintiff proved various facts and circumstances tending to show a promise. Among other things, it was proved that the defendant paid his addresses to the plaintiff, as a suitor, in the spring and summer of 1850. In February, 1851, the plaintiff was delivered of a child. About that time the defendant left the county of Ulster, where he resided, and went away. He was pursued to New-York, and there arrested. A brother of the plaintiff testified, that after the arrest of the defendant, he told him he thought he showed guilt by running away; to which the defendant replied that he would not have gone, if *Shaw* had not agreed to settle it for him. The same witness also testified that the defendant had told him several times that he had thought of marrying the plaintiff, but that he could not now. The plaintiff having rested, the defendant moved for a nonsuit, on the ground that no promise had been proven, or, if it had, that no breach of the promise had been shown. The judge decided that the evidence was sufficient to be submitted to the jury upon the question of a promise to marry, but that there was no sufficient evidence to show a breach, and, upon this ground, granted the motion for a nonsuit. The plaintiff excepted to the decision. Judgment having been entered for the defendant, the plaintiff appealed to the general term.

*M. Sanford*, for the plaintiff.

*E. Cooke*, for the defendant.

Hubbard *v.* Bonesteel.

*By the Court,* HARRIS, J.  A promise of marriage may be, and usually is, proved by circumstantial evidence.  Without positive evidence, a jury is permitted to infer it from the conduct of the parties.  It is enough that such circumstances are proved as satisfy the jury ·that there has, in fact, been a mutual engagement.  It is rare that any other evidence is given in actions of this description.  In *Hutton* v. *Mansell,* (3 *Salk.* 16,) Lord Holt held that it was sufficient evidence to prove a promise on the part of the plaintiff that she had carried herself as one consenting and approving the promise of the defendant.  And in *Wightman* v. *Coates,* (15 *Mass.* 1,) Chief Justice Parker said the same principle applied to both the parties.

If a mutual engagement may thus be proved by circumstances, why may not a breach of that engagement, by a refusal to marry, be proved in like manner ?  In *Willard* v. *Stone,* (7 *Cowen,* 22,) it was proved that the defendant, after having promised to marry the plaintiff, went a journey, and upon his return, broke off all intimacy with the plaintiff, and, when an explanation was demanded, he gave none.  It was held that this evidence fully authorized the jury in finding a refusal to marry.  (*See also* 2 *Starkie on Ev.* 942.)

In this case, neither the evidence of a promise nor of a refusal to marry is very decisive, but I think there is quite as much ground to infer a refusal as a promise.  The learned judge who tried the cause thought the evidence of a promise was sufficient to be submitted to the jury.  In this I think he was right.  I think, too, he should have left it to the jury to say, in case they should find a promise, whether there was not also a refusal.

The attentions, from which it was proposed to allow the jury to infer an engagement to marry, were bestowed in the spring and summer of 1850.  It does not appear that they were continued after that period.  It is, perhaps, fair to infer that they were discontinued.  In February following, the plaintiff was delivered of a child, and about the same time the defendant absconded.  When, upon his being arrested and brought back,

he was upbraided for his conduct, he said he would not have gone away, had not Shaw agreed to settle the matter for him. He also told the plaintiff's brother, about the same time, that he had thought of marrying the plaintiff, but that now he would not. It might well be, that, from such conduct and declarations, the jury would have inferred a refusal by the defendant. At any rate, I think it should have been left to them to say whether there was a refusal or not. The judgment of the circuit court should therefore be reversed and a new trial awarded.

[ALBANY GENERAL TERM, September 5, 1853. *Watson, Wright* and *Harris,* Justices.]